UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBERT SARLES,

       Plaintiff,

v.                                 Case No. 1:24-cv-130

                                         HON. JANE M. BECKERING

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claims for disability insurance benefits (DIB) and supplement security income (SSI).

Plaintiff filed applications for DIB and SSI on September 29, 2020, alleging a disability onset date of July 15, 2009. PageID.32. Plaintiff identified his disabling conditions as bipolar with depression, anxiety, obesity, environmental allergies, and dehydration. PageID.226. Plaintiff completed one year of college and had past relevant work as a telephone assistant and an order clerk. PageID.39. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 16, 2023. PageID.32-40. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 15, 2009 and met the insured status requirements of the Social Security Act through December 31, 2010.  PageID.34.  At the second step, the ALJ found that plaintiff has severe impairments of depression, anxiety, obstructive sleep apnea (OSA), and obesity.  PageID.34.  At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35.

The ALJ decided at the fourth step that:

After considering the record, I find the claimant has the residual functional capacity to perform light work (20 CFR 404.1567(b) and 416.967(b)) except he is unable to climb ladders, ropes, or scaffolds, or be exposed to unprotected heights, dangerous moving machinery, uneven terrain, or extreme heat and/or humidity. He is able to occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. Work is limited to simple routine tasks, performed in a work environment free of fast-paced production, involving occasional simple work-related decisions and routine work-place changes. He can have occasional interaction with the general public, coworkers, and supervisors.

PageID.36.  The ALJ also found that plaintiff is unable to perform past relevant work.  PageID.39.

At the fifth step, the ALJ determined that plaintiff can perform a significant number of unskilled jobs at the light exertional level.  PageID.39-40.  Based on the testimony of vocational

4

expert (VE), the ALJ found that plaintiff can perform the requirements of occupations in the national economy such as office helper (7,000 jobs), routing clerk (140,000 jobs), and router (25,000 jobs).  PageID.40.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 15, 2009 (the alleged onset date) through February 16, 2023 (the date of the decision).  *Id*.

### III.    DISCUSSION

Plaintiff set out one error.

**The Decision violates the rules on evaluating a medical source statement by not considering the supportability and consistency of the statement.**

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record."  20 C.F.R. §§ 404.1520c(b) and 416.920c(b).

In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and, (5) other factors.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5).  The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency".  *See* 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2).  The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1).   The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2).

The gist of plaintiff's claim is that while plaintiff spent 99 hours in therapy with Mr. Richmond from 2020 through 2022, "[t]he Decision fails to mention any details concerning Mr. Richmond's records and provides no indication that it considered any of that evidence." Plaintiff's Brief (ECF No. 9, PageID.987). In addition, "[b]y not mentioning any of Mr. Richmond's records, it is impossible to know how or if the Decision considered whether those records support the opinions." *Id*.

The record reflects that plaintiff had therapy in conjunction with his treatment by psychiatrist R. Mahabir, DO.  PageID.37.  The ALJ summarized Mr. Richmond's therapy as follows:

> . . .  In early 2020 sessions, [claimant] was noted to consider a job and was told to have a therapist help him in his search.  In August 2020, Dr. Mahabir noted the claimant did not look for a therapist and his report [sic] he painted a room at home and wish [sic] to continue his medicines (5F). He had therapy with K. Richmond, MA (6F).
>
> In April 2021, the claimant was noted to not show for treatment visits. His mood and anxiety were noted as stable. Dr. Mahabir found he was calm, attentive, and oriented with normal mood and cognition. In October 2021, he was noted to drive out of state to Arkansas, to help someone move and then another time to Georgia, to let his mother visit a friend (10F). He continued in therapy with Mr. Richmond (11F).  In December 2021, he was noted to have not refilled one of his medications for report of stable mood/anxiety. Dr. Mahabir found him euthymic, alert, and oriented with good memory and focused attention. He was noted in follow-up visits in 2022 to have stable symptoms and unchanged findings (15F). In August 2022, the claimant denied depression and anxiety (18F).

6

PageID.38.

Although the ALJ did not address the substance of Mr. Richmond's therapy notes, the record contains about 240 pages of records related to this therapy with Richmond Counseling, LLC: Exh. 6F (9/5/2020 to 2/26/2021) (PageID.657-714); Exh. 8F (3/12/2021 to 5/26/2021) (PageID.723-748); Exh. 9F (7/2/2021 to 8/27/2021) (PageID.748-763); Exh. 11F (9/3/2021 to 12/3/2021) (PageID.781-806); Exh. 14F (9/3/2021 to 10/12/2022) (PageID.817-922); and, Exh. 17F (10/19/2022 to 12/21/2022) (PageID.946-960).

On October 6, 2022, Mr. Richmond gave an oral statement to plaintiff's counsel, which included his opinions of plaintiff's condition. Exh. 13F (PageID.809-816). At that time, Mr. Richmond had been treating plaintiff for just over two years and saw him "almost every week" via video. PageID.810. Among other things, Mr. Richmond reported: that plaintiff is depressed; that plaintiff has poor self care (*e.g.*, he does not shower regularly and "he's pretty inactive", and he expresses concern about gaining weight and his hygiene); that plaintiff has an inconsistent sleep cycle; and, that plaintiff has a bipolar diagnosis. PageID.811-814. With respect to functional limitations, Mr. Richmond stated that plaintiff's sleep pattern affects his ability to get to work, and that his anxiety interferes with work (*e.g.*, "after a short time [plaintiff's] anxiety builds up so much that he might miss three or four days and then lose his job, or ends up saying I'm no good to you, so he quits"). PageID.816. Although Mr. Richmond began treating plaintiff in 2020, he was confident that plaintiff's current problems extended back to his childhood / adolescence, and that he has been struggling with these mental problems for at least 15 years. *Id*. With respect to plaintiff's sleep cycle problems, Mr. Richmond stated that,

> He might get some sleep in the afternoon, but then be up the whole next night, and because his sleep cycle is so far off, the quantifiable thing I see is he maybe gets to work two days out of a full work week, just because of the sleep stuff.

PageID.815.

       The ALJ addressed Mr. Richmond's interaction with plaintiff as follows:

       The claimant's therapist, K. Richmond, MA, opined in October 2022, the claimant would be absent two days/week and could not work a full day (13F). This opinion is unpersuasive because it is inconsistent with the record reflecting generally occasional anxious mood and depression (noting mild) with limited insight and fair (and occasionally poor) judgment (1F, 3F, 4F, 5F, 10F, 15F). I also note in August 2022, the claimant reported sleeping 6-10 hours (using his CPAP) and feeling well-rested and denying depression/anxiety (18F/9). The examination findings were unremarkable. This assessor began therapy with the claimant in September 2020, which was done via video and notes that the opinion regarding the claimant's limitations was primarily based on the claimant's self-reports. He also opines that the mental health limitations were ongoing for at least 15 years, despite not treating the claimant prior to September 2020.

PageID.38.

       The issue for the Court is whether the ALJ adequately addressed "consistency" and "supportability" in finding that Mr. Richmond's opinion was unpersuasive.  As an initial matter, the record does not support the ALJ's characterization of Mr. Richmond's opinion, *e.g.*, that "the claimant would be absent two days/week and could not work a full day."  As discussed, Mr. Richmond opined that plaintiff would have more absences, *i.e.*, "maybe gets to work two days out of a full work week".  In addition, the ALJ did not cite any particular treatment note generated by Mr. Richmond.  Based on this record, the Court concludes that the ALJ did not adequately evaluate Mr. Richmond's treatment and opinions.  In this regard, "an ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Security Administration*, 55 Fed. Appx. 333, 339 (6th Cir. 2003) (internal quotation marks omitted). Accordingly, this matter should be reversed and remanded pursuant to

sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Mr. Richmond's treatment notes and opinions.

## IV.    RECOMMENDATION

For all of these reasons, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Mr. Richmond's treatment notes and opinions.

Dated:  January 8, 2025                                    /s/ Ray Kent
                                                          RAY KENT
                                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).